**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 11-47-DLB-JGW**

**RICHARD RIEDLING**                                                                                     **PLAINTIFF**

vs.                              **MEMORANDUM OPINION AND ORDER**

**THE MOTORIST INSURANCE GROUP**                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Richard Riedling brings this civil action for property damage benefits pursuant to a personal automobile insurance policy issued to him by Defendant The Motorists Insurance Group. Additionally, Plaintiff asserts a negligence claim for damage to his automobile due to a tow purportedly performed at the direction of Defendant. Finally, Plaintiff seeks to recover damages for violation of the Kentucky Unfair Claims Settlement Practices Act. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

This matter is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. # 84) as to Plaintiff's claims property damage benefits and negligence damages. The motion has been fully briefed (Docs. # 85, 86, and 87), and the matter is now ripe for review. For the reasons set forth below, Defendant's motion is hereby granted. Furthermore, because Plaintiff's Unfair Claims Settlement Practices Act claim fails as a matter of law, the Court also enters summary judgment with respect to that claim.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case primarily stems from a personal automobile insurance policy issued by

1

Defendant The Motorists Insurance Group to Plaintiff Richard Riedling, effective from March 8, 2007 to September 8, 2007. (Doc. # 84-1, at 1). That policy provides coverage for loss to an insured vehicle as follows:

> We will pay for direct and accidental loss to your covered auto or any non-owned auto, including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one your covered auto or non-owned auto results from the same collision, only the highest applicable deductible will apply. We will pay for loss to your covered auto caused by:
>
> > 1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
> >
> > 2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.
>
> If there is a loss to a non-owned auto, we will provide the broadest coverage applicable to any your covered auto shown in the Declarations.

(Doc. # 84-1, at 3-4). The policy also excludes certain types of damage from covered losses, including damage due and confined to wear and tear. (Doc. # 84-1, at 4).

On August 8, 2007, Plaintiff was involved in a single car accident in which a truck pulled out in front of his 1999 Cadillac Seville and caused him to drive over the curb on the side of Dixie Highway. (Doc. # 84-1, at 1-2). No police report was generated from this incident. (Doc. # 84-1, at 1).

Almost six months after the accident, Plaintiff took his vehicle to Fort Mitchell Garage to be inspected. (Doc. # 84-1, at 2); (Doc. # 84-3). Based on that inspection, the garage identified that the Seville needed a four-wheel alignment and a tire balance, and noted that the vehicle had 125,972 miles at the time of the inspection. *Id.* The garage also noted in its invoice that the front end of the vehicle was lower than it used to be. (Doc. # 84-3). The garage ultimately charged Plaintiff $170.00 for inspecting the vehicle and labor, and $10.40

for parts. *Id.*

Plaintiff subsequently agreed to take his vehicle to Joseph Cadillac in April of 2008 for further examination. (Doc. # 1-1, at 10). The dealership tested the car and ascertained that the right rear shock absorber and wheel hub were damaged. (Doc. # 1-1, at "Exhibit 8").[1]

Years later, Plaintiff's vehicle was towed by Complete Towing to Joseph Cadillac in Florence, Kentucky so it could be inspected by Bill Harffman, an automobile property damage appraiser for Defendant. (Doc. # 84-1, at 4-5); (Doc. # 65-1, at 1). Harffman inspected the Seville on February 8, 2011 and found no visible damage to the vehicle other than normal wear and tear of usage. (Doc. # 84-1, at 3);(Doc. # 65-1, at 2). His determination was also based upon the prior inspection performed by Fort Mitchell Garage. (Doc. # 65-1, at 2). Harffman further documented that Plaintiff had driven the Seville over 10,000 miles from 2008 to 2011. (Doc. # 84-1, at 3);(Doc. # 65-1, at 2).

Plaintiff subsequently filed a Complaint in Kenton Count Circuit Court on February 23, 2011. In that Complaint, Plaintiff asserted a claim for property damage benefits against Defendant pursuant to the aforementioned personal automobile insurance policy. (Doc. # 84-1, at 1). Additionally, Plaintiff claimed that Defendant was responsible for further damage to the Seville due to the towing performed by Complete Towing. Finally, Plaintiff sought to recover damages for several violations of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA").

---

[1] Plaintiff attached the estimate to his Complaint as "Exhibit 8." Neither party has attached the exhibit to the pleadings addressed herein.

Defendant thereafter removed this action on March 11, 2011, and then moved for summary judgment with respect Plaintiff's USCPA claims. (Doc. # 10). Even though Plaintiff's UCSPA claim relating to the denial or delay of basic reparations benefits was barred by the Kentucky Motor Vehicle Reparations Act, the Court allowed Plaintiff to proceed with his UCSPA claim to the extent that it related to his claim for property damages. (Doc. # 18).

Following the Court's decision to allow Plaintiff to proceed as to his claim for property damages, Magistrate Judge Wehrman granted Defendant's Motion to Bifurcate (Doc. # 20) Plaintiff's UCSPA claim and to hold discovery in abeyance pending resolution of the underlying claims for insurance benefits. (Doc. # 26). Defendant now moves for summary judgment with respect to Plaintiff's claim for those benefits, as well as his tort claim.

## II. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

As noted, Defendant requests this Court to grant summary judgment as to Plaintiff's claim for property damage benefits due to the August 8, 2007 automobile accident, as well his tort claim for damages due to the towing completed in February of 2011. This section will first set forth the controlling summary judgment standard, then assess these claims in chronological order, and finally address extraneous arguments asserted by Plaintiff

### A. Summary Judgment Standard

While substantive state law is applicable to this case pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in a diversity action must apply Federal Rule of Civil Procedure 56 in ruling on a motion for summary judgment. This rule states that summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, in deciding a motion for summary judgment, courts must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As is clear from the face of Rule 56, the "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citation omitted). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Instead, the nonmoving party must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

### B. Damage Due to the Automobile Accident

Plaintiff seeks property damage benefits due to the accident pursuant to the personal automobile insurance policy issued by Defendant. This policy covered direct and accidental loss to Plaintiff's vehicle, but excluded damage caused by wear and tear.

In *Secura Insurance Company v. Gray Construction, Inc.*, 717 F. Supp. 2d 710, 714-15 (W.D. Ky. 2010), modified on clarification (July 12, 2010), the United States District Court for the Western District of Kentucky set forth a cogent framework for assessing insurance claims pursuant to Kentucky law:[2]

> Under Kentucky law, the party seeking to establish coverage bears the burden of establishing that the incident at issue was within the scope of the policy. However, the burden is on the insurer to establish that an exclusion bars coverage. Once the insurer has shown that application of an exclusion, the burden shifts back to the insured.

(Citations omitted). Here, Defendant has put forth evidence that the policy's exclusion–refusing to cover damage due and confined to wear and tear–bars coverage. Specifically, Bill Harffman, an appraiser and expert witness for Defendant, has observed that Plaintiff had driven the Seville over 10,000 miles from 2008 to 2011, and concluded that there was no visible damage to the vehicle other than normal wear and tear of usage.[3]

---

[2] It is well settled that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994). Here, the forum state is Kentucky, and under Kentucky law a contract is interpreted according to the law of the state with the most significant relationship to the transaction and parties. *Lewis v. Am. Family Ins. Group*, 555 S.W.2d 579, 581 (Ky. 1977). Accordingly, Kentucky law must apply because the insurance policy was issued to a Kentucky citizen who is now seeking benefits for an accident that occurred in the Commonwealth.

[3] Defendant also identified Dick Feldkamp–a former senior automobile property damage appraiser for the company–as an expert witness. Feldkamp also inspected Plaintiff's vehicle and determined that there was no visible damage other than a flat tire. (Doc. # 84-1, at 3); (Doc. # 65-1, at 1-2).

6

Simply put, Defendant has met its burden with respect to the exclusion, as the company has shown that any damage to Plaintiff's vehicle was caused by wear and tear.

In contrast, Plaintiff has not submitted any depositions, affidavits, or other evidence demonstrating loss to his vehicle attributable to the accident.[4] Instead, Plaintiff relies upon the invoice from Fort Mitchell Garage and a preliminary estimate conducted by Joseph Cadillac in April of 2008, almost eight months after the accident. However, neither the invoice nor the estimate establish a link between the vehicle's condition and the accident; for lack of a better word, neither speaks to "causation."

As noted, the invoice observed that the Seville needed a four-wheel alignment and a tire balance, acknowledged that the front end was lower than it used to be, and memorialized that the garage charged Plaintiff $170 for inspecting the vehicle and labor, and $10.40 for parts. The estimate identified more significant damage to the Seville, as Joseph Cadillac ascertained that the right rear shock absorber and wheel hub were damaged. Still, this documentation neither proves that the loss to Plaintiff's vehicle stemmed from the accident, nor refutes Defendant's initial showing that any damage was caused by wear and tear. This is especially true given that the invoice and the estimate were produced several months after the accident, and Plaintiff has driven the Seville over 10,000 miles from 2008 to 2011.

Rather than setting forth such facts, Plaintiff invites the Court to comb through the

---

[4] The term "loss" is not defined in the policy. That being said, under Kentucky law contract terms are interpreted by assigning language its ordinary meaning. *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010). Furthermore, in construing an insurance policy, the policy should be read as a whole. *Secura Ins. Co.*, 717 F. Supp. 2d at 715 (citing *Sun Life Ins. Co. v. Taylor*, 56 S.W. 668 (Ky. 1900)). Taken together, these two principles dictate that "loss" is effectively a synonym for "damages" as used in this policy.

record; specifically, he argues that Defendant's contention that there is a lack of evidence is without merit in light of the previous exhibits he submitted, although he does not point the Court to any of those exhibits. This, however, does not suffice. *See supra Street* and *In re Morris*. No police report was generated from this incident, and no other evidence–depositions, affidavits, etc.–has been submitted establishing a link between the vehicle's condition and the accident.

In sum, Plaintiff has not produced specific facts showing a covered loss, much less any evidence contradicting Defendant's proof establishing that the only damage to the Seville stemmed from normal wear and tear. No rational fact finder, then, could find for Plaintiff, thus compelling an entry of summary judgment in favor of Defendant as to Plaintiff's claim for property damage benefits due to the automobile accident.

### C. Damage Due to the Tow

Plaintiff also seeks damages due to the towing performed by Complete Towing in February of 2011. In so doing, he admits that the personal automobile insurance policy was not in effect at the time the vehicle was towed, but asserts that his claim is for negligent damage to the automobile while under the protection and control of Defendant. Specifically, Plaintiff contends that Defendant made the arrangements for towing service and is therefore liable for the following resulting damage: grease on the seating surfaces, interior door, and steering, a crushed battery cover under the vehicle hood, and damage to the front bumper cover and lower grille.

At the outset, the Court acknowledges that Plaintiff is proceeding *pro se* and is thus affording him the benefit of the doubt with respect to *both* of his claims. *See Haines v. Kerner*, 404 U.S. 519 (1972) (recognizing that allegations of a *pro se* complaint are held

to less stringent standards than formal pleadings drafted by lawyers); *Spotts v. United States*, 429 F.3d 248 (6th Cir. 2005) (same). However, even assuming that Plaintiff has properly plead a claim for negligence, he has again failed to produce any supporting evidence.

Under Kentucky law, a plaintiff must first prove that the defendant owed a duty of care to be successful in a negligence action. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Here, Plaintiff repeatedly asserts that Defendant had his vehicle towed and thus assumed responsibility, yet fails to point this Court to any evidence that Defendant actually arranged the tow. Without any such evidence, no rational trier of fact could conclude that Defendant owed Plaintiff a duty of care as to the tow.

Defendant, on the other hand, puts forth evidence that it did not arrange for Plaintiff's car to be towed. Defendant points to the invoice from Complete Towing, which does not bear Defendant's name nor any other indication that the company was involved in the tow. (Doc. # 84-1, at 8); (Doc. # 84-7). In addition, Defendant provides the affidavit of Jeff Miller, an adjuster for the insurance company, who attests that Plaintiff arranged to have the Seville towed by Complete Towing to Joseph Cadillac. (Doc. # 84-1, at 9); (Doc. # 84-6, at 1). He further states that Defendant neither selected nor contracted with Complete Towing to tow Plaintiff's vehicle. (Doc. # 84-1, at 9); (Doc. # 84-6, at 2).

In sum, Plaintiff has not produced any evidence showing that Defendant had anything to do with the towing; therefore, no rational trier of fact could find that Defendant owed Plaintiff a duty of care. This Court, then, is also compelled to enter summary judgment in favor of Defendant as to Plaintiff's claim for damages stemming from the towing performed by Complete Towing.

**D.     Extraneous Arguments**

Plaintiff first argues that Defendant has paid personal injury protection ("PIP") payments and by doing so has accepted financial liability for the damages to Plaintiff's vehicle. However, the fact that Defendant paid for a portion of Plaintiff's medical expenses pursuant to PIP coverage has absolutely no bearing on Plaintiff's claim for property damage due to the accident. There is no definitive correlation, much less causation, between bodily injury due to an automobile accident and loss to a vehicle due to that same accident, so Plaintiff must still put forth evidence that the Seville's loss was within the scope of the personal automobile insurance policy and refute Defendant's showing that the exclusion for damage due and confined to wear and tear bars coverage. *See supra Secura Ins. Co.*

Next, Plaintiff contends that Bill Harffman, Defendant's appraiser, has not demonstrated any certification to inspect or make a determination as to the condition of the Seville.[5] According to Plaintiff, the material he generated should thus be struck from the record. This Court, though, has already considered and denied Plaintiff's Motion in Limine to Exclude Testimony of Bill Harffman (Doc. # 51), and will therefore no longer entertain such arguments.[6] (Doc. # 86, at 3); (Doc. # 83).

Finally, Plaintiff points to the RICO Act (18 U.S.C. §§ 1961-1968) and Kentucky statutes concerning the taxation of businesses by county governments (KRS § 67.750 and 67.790) in support of his various positions. These statutes, though, are irrelevant and immaterial to this action.

---

[5] Plaintiff makes the same contention with respect to Dick Feldkamp. *See supra* note 3.

[6] The Court also considered and denied Plaintiff's Motion in Limine to Exclude Testimony of Dick Feldkamp (Doc. #51). *See supra* notes 3 and 5.

### III. PLAINTIFF'S UCSPA CLAIM

As noted, this Court earlier allowed Plaintiff to proceed with his UCSPA claim to the extent that it related to his claim for property damages. Defendant, though, did not address this claim in moving for summary judgment. However, district courts can enter summary judgment sua sponte as long as the party against whom judgment is entered had sufficient opportunity to defend. *Salehpour v. Univ. of Tennessee*, 159 F.3d 199 (6th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317).

In Kentucky, an insured must show, among other things, that the insurer is obligated to pay the claims under the terms of the policy to recover for a bad faith refusal to pay a claim under the UCSPA. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846-847 (Ky. 1986) (Leibson, J., dissenting)). Again, this Court has assessed Plaintiff's claim for property damages and concluded that he has not produced specific facts showing a covered loss, much less any evidence contradicting Defendant's proof establishing that the only damage to his vehicle stemmed from normal wear and tear. Because Plaintiff has failed to put forth any evidence that the company was obligated to pay the insurance benefits, the Court will also enter summary judgment as to his UCSPA claim.

### IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Defendant's Motion for Partial Summary Judgment (Doc. # 84) be, and is hereby **granted**;

11

(2) Plaintiff's claims for property damage benefits due to the August 8, 2007 automobile accident and damages due to the towing completed in February of 2011 be, and are hereby **dismissed with prejudice;**

(3) Summary judgment is **entered** as to Plaintiff's UCSPA claim, and that claim is hereby **dismissed with prejudice**;

(4) Defendant's Motion to Strike Plaintiff's Reply Memorandum Filed June 15, 2012 (Doc. # 88) is **denied as moot**;

(5) This matter is hereby **stricken** from the active docket of the Court; and

(6) A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 16th day of October, 2012.

Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\2011\11-47 MOO Granting MSJ.wpd